In the Matter of the Assignment of FRANK LESLIE to ISAAC W. ENGLAND for the Benefit of Creditors.

[SPECIAL TERM.]

(Decided February 14th, 1881.)

After the filing of an assignment for the benefit of creditors, nearly all the assignor's creditors executed an instrument empowering a committee of themselves to control and manage, compound and release their claims, and consenting that the business of the assignor might be continued by the committee themselves, or through the assignee or others. The business was carried on for a time by the assignee, and a dividend was paid by him to the creditors out of the proceeds. Subsequently an agreement was entered into between the committee, on behalf of the creditors represented by them, and the assignor, for a composition, upon the payment by the assignor to those creditors of a specified percentage of the portion

of their claims remaining unpaid. The agreement also contained provisions for the transfer by the assignee of the assigned estate, upon certain conditions, to the assignor, and for the continuance by the latter, under certain restrictions, of his former business, for the purpose of obtaining thereby the means of paying the amount of the composition. The estate was not, however, so transferred to the assignor, and the business was continued by the assignee, with the assistance of the assignor, and dividends were paid to the creditors out of the proceeds ; but before the dividends so paid had reached the amount of the composition, and before the expiration of its terms, the assignor died. *Held*, that his personal representatives, upon paying to the creditors the amount required, in addition to the dividends already paid, to complete the payment of the composition, were entitled to be subrogated to the rights of the creditors It was no objection to this, under the circumstances, that such dividends had been paid by the assignee, instead of by the assignor, they having been in fact paid out of the fund contemplated by the agreement.

APPLICATION by the executrix of a deceased assignor for the benefit of creditors to be subrogated to the rights of his creditors upon payment to them of the amount remaining unpaid upon a composition agreement made between them and the testator.

On the 8th of September, 1877, Frank Leslie made an assignment of all his property to Mr. Isaac W. England for the benefit of his creditors. On the 22nd of October, 1877, an instrument was executed by nearly all the creditors in the words and figures as follows :—

" *Whereas*, at a meeting of the creditors of Mr. Frank Leslie, held at the city of New York, on the 13th day of September, 1877, a committee was appointed with instructions to investigate fully the affairs of Mr. Leslie, and to report, at a subsequent meeting to be called by their chairman, such recommendations as in their judgment would best promote the interests of the creditors ;

" *And* the said committee having, at a meeting called by their chairman, and held on the 5th day of October, 1877, at the office of the American News Company, made their report and recommended in substance that, for the purpose of securing unity of interest and of action, the creditors should appoint a board of trustees, to consist of five (5) of the creditors,

with authority to act for the whole body of the creditors, in the matter of the management and settlement of the estate, in so far and in such manner as they shall be advised by counsel can legally be done :—

" *Now therefore,* we, the undersigned creditors of Mr. Frank Leslie, do hereby and for the purpose aforesaid make, constitute and appoint Alexander H. Rice, John H. Hall, Edward Goodwin, Jr., William D. Wilson, and William H. Parsons our true and lawful attorneys, for us and in our names to take control and management of our several claims and to exercise every right and power in relation to our several claims and towards the estate of Frank Leslie that we or either of us, by virtue of our said claims, are entitled to exercise towards the same, to meet together in committee, and to advise and act in our interests by vote of the majority, and to compound, release and compromise the said claims, and to exercise every power in relation to the same and to the control and management of the said estate that we have or can delegate or assign ; and we severally consent that such a contract or agreement may be made with Mr. Frank Leslie for his employment in and about the business of the estate as to our attorneys may seem proper. not to exceed, however, twenty per cent. of the net profits thereof, and we further consent that, if deemed advisable, the business as heretofore conducted by Mr. Leslie may be maintained and continued by our said attorneys by themselves or through the assignee, or such person or persons as they may delegate in our interests, until the 31st day of December, 1880, inclusive ; giving our said attorneys full power to retain or employ the services of such and so many persons in the business aforesaid as to them shall seem best, and to do everything whatsoever in the premises as fully as we could do if personally present, with authority to fill any vacancy in the said board by vote, hereby ratifying and confirming what our said attorneys, or such substitute so elected, shall lawfully do or cause to be done.

" And we severally covenant and agree each with the other that during the period aforesaid allowed for the settlement of the estate, to wit : to the thirty-first of December, 1880, in-

clusive, we will take no proceedings at law or otherwise for the collection or enforcement of our respective claims; and that in case the business so to be carried on in our interest (if that course is resolved on) by our said attorneys, or by the assignee, or any person delegated by them, acting according to their best judgment in the premises, shall result in loss rather than gain, or by reason of fire, the elements or some unforeseen accident, be impaired or destroyed, that we will not make any personal claim therefor against our said attorneys, agents, or either of them, or their said agents, or against the assignee or any person by them intrusted on our behalf to act herein; but that such loss, if any, may be charged against the trust fund in their hands, or in the hands of the assignee, we relying upon those acting in our behalf not to continue the said business further when it shall become clearly apparent to them that the same cannot be carried on without loss. And we hereby consent that our attorneys or said assignee may suspend any publications or initiate any new ones as their judgment may dictate.

" And it is further understood and agreed by us that nothing herein contained is to be deemed to bind our said attorneys or their agent or agents to any particular course of action, it being our intention not to hamper our said attorneys in their action, but to empower them to act in our interests as changing circumstances may require, without restriction as to their course and with full authority to consent and act for us severally in the matter as fully as we might individually do.

" As the legal title of the estate is now vested in the assignee, it is understood and agreed that the above provisions authorizing the continuance of said business under the advice and with the co-operation of our said attorneys and the said immunity from personal liability for loss occasioned thereby, shall extend to such assignee.

" In the event of said business being carried on we are to receive eighty per cent. of the net profits thereof pro rata. If continued till December 31st, 1880, and the said eighty per cent. paid and the property not disposed of by sale or otherwise, then we consent to a reconveyance to said Leslie, of all

such machinery and other property connected with the publication business, as passed by the assignment of September 8th, 1877, to the assignee, to wit, what is commonly known as the 'business plant.' The net profits accruing up to January 1st, 1878, are to be divided pro rata among the creditors. If, in the exercise of their discretion by our attorneys, the business is closed out prior to the 31st of December, 1880, then we are to be paid our pro rata shares of the net proceeds.

"And we severally agree upon the closing up of the estate to give to our said attorneys or said assignees such other and further release as may be required to discharge them from liability in the premises."

On the 20th day of March, 1879, a certain other instrument was executed on behalf of said creditors with Frank Leslie in the words and figures as follows :

"An Agreement, made this twentieth day of March, 1879, between such of the creditors of Frank Leslie as became parties to the power of attorney dated the twenty-second of October, 1877, constituting Alexander H. Rice, John H. Hall, Edward Goodwin, Jr., William D. Wilson, and William H. Parsons, attorneys of the said creditors for the purposes and with the powers therein contained, as will more fully appear by reference thereto, by their said attorneys, parties of the first part, and the said Frank Leslie, party of the second part.

"Whereas, Said power of attorney authorized said attorneys to meet together in committee, and to advise and act in the interest of the said creditors by vote of the majority, and to compound, release and compromise the claims of the said creditors against the said Frank Leslie, and to exercise every power in relation to the same, and to the control and management of the assigned estate hereinafter mentioned, that the said creditors had, or could delegate or assign.

"And whereas, The said attorneys or committee did meet as aforesaid in committee, and acted therein by vote of the majority of the said attorneys or committee, and authorized the execution of this agreement on behalf of the said creditors.

"And whereas, The said Frank Leslie, at the City of New York, on the eighth day of September, 1877, duly made,

acknowledged, and delivered an assignment to Isaac W. Eng-
land, of Ridgewood, in the State of New Jersey, doing busi-
ness in the State of New York, of all and singular the lands,
tenements, hereditaments, appurtenances, goods, chattels,
stocks, promissory notes, debts, claims, demands, property,
choses in action and effects of every description belonging to
the said Frank Leslie, wherever the same then were, except
such part as was exempt by law from levy and sale under exe-
cution, for the equal benefit of his creditors, ratably, without
preference, as will more fully appear by reference to said as-
signment, recorded on the day and year last mentioned, in the
County Clerk's office of the county of New York, where the
said Leslie then resided and carried on his business.

"And whereas, The parties hereto have hereby come to a
final compromise and settlement of all disputes and agree-
ments existing or claimed to be existing between them.

"And whereas, The said assignee has been carrying on the
business of the assigned estate for the account of the creditors,
namely, the same business of publication as the said Leslie was
engaged in up to the time of the said assignment, and has, out
of the proceeds of the assigned estate, heretofore paid a divi-
dend of ten per cent. of the face of the claims of the creditors
under the said assignment, leaving due the creditors a balance
of about three hundred and two thousand dollars, upon which
balance the said Leslie proposes to pay fifty per cent., or
about the sum of one hundred and fifty-one thousand dollars,
on or before the 31st day of December, 1881, as is hereinafter
more fully provided for, in satisfaction and discharge of the
said claims.   And the parties of the first part, in consideration
of the promises and agreements of the said Leslie hereinafter
contained, and of the sum of one dollar by them paid him, the
receipt whereof is hereby acknowledged, hereby agree with
him that the said fifty per cent. of the balance of their said
claims, when paid, shall be in full compromise and discharge
of their said claims respectively ; and in consideration afore-
said hereby consent that the said assignee, Isaac W. England,
now release, and do hereby authorize the said assignee now to
release to the said Frank Leslie, the assignor, all and singular

the unadministered estate and assets embraced in the said assignment from the said Frank Leslie to the said Isaac W. England, bearing date the eighth day of September, 1877, or since acquired by the said assignee in the course of the said business, the said assignee being first paid therefrom the balance that may be due to him for his services in the premises, and a proper provision being made to protect and indemnify the said assignee against any indebtedness or liability that he has incurred in the conduct of the said business, and against all liability for rent or otherwise under the lease hereinafter mentioned; and further agree that they will hereafter, from time to time, upon request, sign, acknowledge and deliver, such further consent or authority which they can rightfully sign and acknowledge, to aid in and facilitate such release as aforesaid by the said assignee to the said Frank Leslie.

" *And* the party of the second part, in consideration of the premises and of the sum of one dollar to him paid by the parties of the first part, the receipt whereof is hereby acknowledged, agrees with the parties of the first part to pay to the said creditors respectively, fifty per cent. of the said balance of the face of their respective claims, on or before the 31st day of December, 1881, and at such earlier time and times, in installments, as hereinafter provided for; and also simultaneously with the execution hereof, to deliver to the said attorneys, namely, Alexander H. Rice, John H. Hall, Edward Goodwin, jr., William D. Wilson and William H. Parsons, his bond, of even date herewith, in the penal sum of two hundred thousand dollars, conditioned for the payment of the said sum of one hundred and fifty-one thousand dollars, on or before the 31st day of December, 1881, and also conditioned for the performance by him of all and singular the promises and agreements on his part herein contained, and which said bond is to be held by the said attorneys, for the benefit of the said creditors, for the payment of the said fifty per cent. of the said respective claims, and to be enforced only in case of default on the part of the said Frank Leslie in the performance by him of any of the conditions of the said bond; and he also further agrees with the parties of the first part to duly execute, ack-

nowledge, and deliver to the said Alexander H. Rice, John H. Hall, Edward Goodwin, jr., William D. Wilson and William H. Parsons, or to the survivors or survivor of them, simultaneously with the release to him, the said Leslie, of the unadministered part of said assigned estate, a chattel mortgage in due and usual form, approved by the counsel of the said mortgagees, upon all and singular the said unadministered assigned estate, original as well as since acquired by the said assignee in the course of business, and then existing, including all copyrights, trademarks, use of names of publications, rights of publication, and all things pertaining thereto, owned or used by the said Frank Leslie prior to the time of making the said assignment, to secure the payment and performance of the conditions of the said bond; and that the said mortgage shall contain the usual insurance clause in regard to loss or damage by fire, the insurance to be to the extent of seventy thousand dollars. And that he will, simultaneously with the giving of the said mortgage, procure insurance on the mortgaged premises to the extent of seventy thousand dollars, in companies approved by the said mortgagees, and deliver the policies thereof to the said mortgagees; and that the policies shall contain the usual clause of loss payable to the said mortgagees; and in case of loss by fire, the insurance money shall be forthwith expended under the direction of both parties in replacing the property destroyed, so that the business may be carried on as if no fire had occurred, as nearly as possible. And he hereby gives and grants to the said Alexander H. Rice, John H. Hall, Edward Goodwin, jr., William D. Wilson and William H. Parsons, and the survivors and survivor of them, an equitable mortgage and lien on the said unadministered estate, original and acquired, and proceeds, when the same shall be released to him by the said assignee as aforesaid, until he, the said Leslie, shall have duly executed, acknowledged, and delivered the said mortgage as aforesaid, and until he shall have delivered said policies of insurance as aforesaid.

" *And* he, the said Frank Leslie, further agrees with the parties of the first part, that a sub-committee of three of the said attorneys, to be appointed by said attorneys and the sur-

vivors and survivor of them, as a committee of the creditors, shall advise and consult with the party of the second part in respect to the discontinuance of any publications which are now being issued, or which may hereafter be issued ; and that if it shall be found that any such publications are actually losing money over their cost of production, then such publications so losing money may be discontinued. And if, upon such consultation, all three of said committee shall be of opinion that such publication should be discontinued, then it shall be discontinued ; and if it shall be proposed to start a new publication in addition to or in place of any that are now published, then the joint consent of said committee and the party of the second part shall be necessary in order to authorize such new publication.

" *And* he further agrees with the parties of the first part, that the said sub-committee, or a majority of them, or the survivor of them, until the said indebtedness shall have been paid, shall have the right to nominate, and also to remove from time to time and as often as a vacancy shall arise, and the party of the second part will appoint the person so nominated as the book-keeper and cashier, who shall respectively keep the books of the business and collect and disburse the funds, and that the cashier shall also act as a general assistant in the business.

" *That* the said sub-committee, or any of them, shall have the right at all times to examine and inspect the books, papers, and accounts. of the business, which shall be kept in such manner as they shall prescribe, and have free access to all the operations of the business ; and that all the moneys, checks, drafts, and notes which shall be collected shall be deposited by the cashier, forthwith, in the Nassau Bank, to be drawn only by checks signed by the party of the second part and countersigned by the cashier at the time when the payment is to be made ; and in case of the absence or sickness of the party of the second part, the checks shall be signed by one of the said committee. That whenever there shall be any accumulation of money over and above the amounts due from the current liabilities, a dividend shall be declared in the discretion and

Matter of Leslie.

by the direction of the said committee, by a check drawn as aforesaid, and the amount paid shall be credited upon the bond as aforesaid.

" *And* the party of the second part further agrees that in the conduct of the business the party of the second part shall not purchase any machinery or permanent property beyond the value of one hundred dollars without the consent of the said committee.

" *And* inasmuch as a large portion of the property and material covered by the said mortgage in the regular course of the said business will be used and disposed of, and new property and material purchased with the proceeds in the regular course of the business (it being intended that such purchases shall be made for cash from such proceeds), the said Leslie agrees that the said committee shall have, and there is hereby granted to them, an equitable lien as security for the payment of the said bond, and the performance by said Leslie of the conditions thereof, on all such property and material acquired from time to time, until the amount of the said compromise shall be fully paid; and the said Leslie agrees that there shall also be paid from the said estate or business, the expense of the said committee of creditors heretofore incurred by them to their counsel for professional services, as well as any proper expense that the said committee may hereafter incur to counsel for professional services in respect of the matters or any of them mentioned or provided for in this agreement or in respect to their duties or other matters in the course of the performance of their duties; and he the said Leslie hereby consents to and approves of the amounts heretofore paid by the assignee for the professional services of the counsel of the said attorneys.

" *And* it is mutually agreed that the said Leslie, during the continuance of this agreement, may draw from the business two hundred dollars per week and no more for his personal expenses, and also at the rate of two thousand dollars per year in addition thereto in trade advertising.

" *It is mutually understood, and agreed,* in the event that the said fifty per cent. of the balance of the said claims shall

not amount to the sum of one hundred and fifty-one thousand dollars, or in case the same shall exceed the sum of one hundred and fifty-one thousand dollars, that the said Leslie shall pay fifty per cent. of such actual balance of the said claims, whether such fifty per cent. shall amount to more or less than the said sum of $151,000.

"*And* the said Leslie, in consideration aforesaid, hereby assumes and agrees to discharge out of the estate and funds now in the hands of the assignee, or hereafter arising out of the business, all indebtedness and liability incurred by the said assignee or by the creditors and every of them to the said assignee in the conduct of the business by the assignee up to the time that the same shall be released to the said Leslie as aforesaid, including all liability and rent passed and future, under any lease or hiring to the said assignee of all and singular the premises occupied by the said assignee in the conduct of the said business, and to fully indemnify and hold the said assignee and the said creditors and each and every of them harmless and protected in the premises.

"*And* the parties of the first part agree that they will not enforce payment of the said bond or mortgage, or enforce the said equitable lien, until the said Leslie shall make default in the performance of any of the conditions thereof; and thereupon the said Leslie agrees that the said mortgage may be foreclosed, and the said lien enforced, and that the said creditors or the said committee or a majority of them, and the survivors and survivor of them, in their own or his name or otherwise, and on behalf of the said creditors, may pursue any remedy at law or in equity by action, injunction, or otherwise, to protect and preserve the rights and interests of the creditors or of the committee, and to realize the amount agreed to be paid in composition as aforesaid or so much thereof as may then remain unpaid.

"*Inasmuch* as Mrs. Alfred Leslie, one of the said creditors, has notified the said attorneys of the revocation by her of the said power of attorney so far as she is concerned, and inasmuch as it is claimed that said power of attorney is irrevocable as to her, and that her attempt at revocation is inoperative, now it is

agreed between the parties hereto that said attorneys do not undertake to bind her by this agreement, unless they have a lawful right to do so.

"It is mutually agreed that any prepayment as hereinbefore contemplated on the said bond or compromise shall not entitle the said Leslie to any rebate of interest on such payment."

The assigned estate was never transferred by the said assignee to said Frank Leslie as contemplated by the said last mentioned agreement, and the said assignee in connection with the said Frank Leslie carried on the said business, and prior to the death of the said Frank Leslie, which occurred on the 10th of January, 1880, 35 of the 50 per cent. mentioned in the compromise agreement had been paid out of the proceeds of said business to the creditors. It being claimed upon the part of the creditors of said Leslie, that his death put an end to said compromise agreement, the executrix of the will of Mr. Leslie offered to said creditors to pay the remaining 15 per cent. upon being subrogated to the rights of said creditors.

This application was made to have the court determine whether or not the decease of Mr. Frank Leslie terminated and put an end to the compromise agreement of March 20th, 1879.

*F. N. Bangs*, and *Francis C. Bowman*, for I. W. England, assignee.

*W. Fullerton*, and *T. Darlington*, for Mrs. Leslie, executrix of the assignor.

*R. O'Gorman*, and *Mr. Whitehead*, for the members of the committee, and for D. A. Bullard & Sons, Campbell Hall & Co., William H. Parsons & Co., Alexander H. Rice, and Kendall & Co., creditors.

*R. O'Gorman*, also for Perkins & Goodwin, creditors.

*Malcolm Campbell*, for Robert Boyd, executor.

Sheldon & Brown, and D. T. Waldron, creditors, do not appear on this proceeding.

VAN BRUNT, J.—[After stating the facts as above.]—It seems to me reasonably certain that we cannot go astray in the construction of the compromise agreement of March 20th, 1877, if we bear in mind the provisions of that agreement, the purposes which were to be attained by its execution, and the relation of the various provisions to each other. It was undoubtedly the intention of both of the parties to that agreement to effect a compromise of the claims of the various creditors of Mr. Leslie, upon the payment of a smaller sum than the total amount due the said creditors, within a future period, and to provide Mr. Leslie with the means, within the period named, and produced by the management of the assigned estate under the supervision of a committee of the creditors and under certain restrictions contained in the said agreement, wherewith to pay the amount which he agreed to pay by the terms of the compromise agreement in full discharge of the claims of these creditors upon him. The instrument is entirely complete in both its branches.

It is a sufficient agreement of compromise if we strike from it all the provisions looking to the management of the property by Mr. Leslie during the time which was given to him to pay the amount for which the debts were compromised. This being the case, there is not necessarily any relation between the compromise agreement and those provisions in this agreement which relate to the management of the business, the profits of which business were to afford Mr. Leslie the means of paying the amount which he agreed to pay. If this is true, and an inspection of the agreement makes it apparent, then Mr. Leslie, the day after the execution of this agreement, had a right to pay the 50 per cent. therein provided to be paid, and to claim from the creditors a complete release and discharge from the debts owing by him to them. He was not necessarily bound to wait to pay the amount of the compromise until he should realize the amount necessary to make such payment from the profits of the business mentioned in the agreement. That privilege of conducting the business and realizing from the business such moneys was a concession to him, and not to the creditors. Therefore, there is nothing in

Matter of Leslie.

those parts of the agreement looking to a continuation of the business, which in any way affected Mr. Leslie's right to be released upon the payment of the 50 per cent. therein mentioned. If this is true, then it is difficult to see, Mr. Leslie having died, why the rights of Mr. Leslie have not descended to his successors in interest, and why they have not the right to comply with the terms of the compromise and pay the balance remaining unpaid, as the time to make such payment has not yet expired.

It was strenuously urged by the counsel for the creditors and the committee, who opposed this construction of the agreement, that it was a personal agreement between Mr. Leslie and his creditors, that as Mr. Leslie has died, and he cannot give that personal supervision to the business which the agreement contemplated, the agreement must necessarily fail. As far as the agreement for compromise is concerned being personal to Mr. Leslie, it is not more personal than every agreement of compromise between a debtor and his creditors. The inducement which moves a creditor to agree with a debtor to receive a less amount than the full sum of the debt in full discharge thereof, is usually the recollection of past profits made out of the trade between the creditor and the debtor, or the expectation that the debtor will continue business, and that future profits may be made sufficient to compensate for the loss then sustained; but it is not claimed that if a debtor has compromised with his creditors, payments to be made at a future day, and the debtor dies before all the payments are made, that his personal representatives have not the power to complete the payments contemplated by the compromise and release his estate from the payment of the debts in full, in conformity with the terms of the compromise.

The argument which I have suggested would undoubtedly be fatal to this compromise agreement if it was necessary that this business should be continued as is contemplated by the terms of the agreement, in order to produce the balance of the fifty per cent. remaining unpaid, because I think it clearly appears that in case of the continuance of the business to realize the funds sufficient to pay the balance of the fifty per cent. remaining unpaid, the creditors would have the right to claim

the personal attention, supervision and experience of Mr. Leslie in the management of the business.

But, as I have already suggested, this was a concession to Mr. Leslie. He had the right to waive the means of raising the money to pay the amount of the compromise, and his personal representatives, coming forward to pay the whole amount due under the compromise without seeking to raise the money from the profits of the business, would seem to be entitled to the benefits thereof.

I am unable to see why the personal representatives of Mr. Leslie are not his successors in interest in reference to the whole of this matter.

It was claimed that there was no right of property to descend to such personal representatives arising out of this transaction. There certainly were equities in Mr. Leslie's favor which could descend, and any surplus which might belong to his estate after the payment of his debts undoubtedly descended to his personal representatives. If that surplus was to be increased by reason of an unfulfilled compromise agreement, and the terms for fulfilling that compromise agreement had not expired, his personal representatives had the right to comply with those terms, make the balance of the payments required to be made thereunder, and reap the benefits thereof, precisely the same as though the terms of the agreement had not had appended to it the peculiar provisions allowing Mr. Leslie to raise the money out of the proceeds of the business to be thereafter conducted by him to make the payments provided for by the agreement.

It is urged by the counsel for the creditors that the thirty-five per cent. paid to the creditors since the making of the agreement of March, was paid by the assignee and not by Mr. Leslie, and that, therefore, Mr. Leslie could not have the benefit of that payment. The difficulty with that proposition is that, although the money was paid by the assignee to the creditors, it was paid out of the very fund out of which the creditors had said that Mr. Leslie should be permitted to pay the amount of the compromise, namely, out of the profits of the business. The agreement of the creditors with Mr. Leslie was that the fifty per cent. should be paid out of

Matter of Leslie.

the results of the assigned property ; the thirty-five per cent. paid by the assignee formed the very fund which the creditors had consented should be used by Mr. Leslie in the payment of the amount of the compromise.

The papers submitted upon this motion show that the creditors have failed to carry out the agreement upon their part by which Mr. Leslie was to be put in full possession of this property for the purpose of raising the money wherewith to pay the compromise.  It therefore comes with very ill grace from them to say that Mr. Leslie personally has not paid the thirty-five per cent. which has been paid by the assignee on account of these claims.  If the creditors had carried out the provisions of the agreement upon their part, Mr. Leslie would have made the payment out of that very fund ; but as they have not done so, so as to enable the assignee to transfer the property to Mr. Leslie, the assignee has made the payments out of the identical fund which was to be transferred to Mr. Leslie.

It seems, therefore, to be difficult to come to any conclusion adverse to the present claims of the representatives, because some other person applied the very fund which Mr. Leslie, under the compromise agreement, had the right to apply to the payment of the amount of the compromise.

I have, therefore, come to the conclusion that the estate of Mr. Leslie, upon payment of the balance due upon the compromise, has the right to be subrogated to the claims of the various creditors.

Application granted.